NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JAMES CASE and RHONDA CASE,      )
                                 )
        Appellants,              )
                                 )
v.                               )      Case No. 2D15-2225
                                 )
TOWER HILL PRIME INSURANCE       )
COMPANY,                         )
                                 )
        Appellee.                )
_____  )

Opinion filed May 11, 2016.

Appeal from the Circuit Court for
Hillsborough County; Paul E. Huey, Judge.

George A. Vaka and Nancy A. Lauten of
Vaka Law Group, Tampa; and Jean F.
Niven of Merlin Law Group, Tampa, for
Appellants.

Scot E. Samis of Traub Lieberman Straus
& Shrewsberry, L.L.P., St. Petersburg, for
Appellee.


SALARIO, Judge.

        James and Rhonda Case appeal a final summary judgment on their

complaint for declaratory relief against their home insurer, Tower Hill Prime Insurance

Company. Based on Tower Hill's proper concession of error, we reverse and remand for further proceedings.

After noticing damages to their home in 2008, the Cases filed a claim with Tower Hill, which then hired an engineering firm, Rimkus Consulting Group, Inc., to evaluate the property. The engineer reported sinkhole damage and recommended subsurface compaction grouting to repair it at an estimated cost of $91,000. Tower Hill acknowledged coverage for the damages under the policy but refused to pay until the Cases entered into a contract for remediation of the damage, in accord with a policy term that so provides. The Cases hired their own engineer, Biller Reinhart, to evaluate the property, and that firm concluded that in addition to subsurface compaction grouting, underpinning was also necessary and that the total cost of subsurface repair was $250,000 to $267,000.

In view of the parties' differences over method of repair, Tower Hill invoked the neutral evaluation process in June 2010.[1] The neutral evaluator, SDII Global, agreed that compaction grouting was adequate to remediate the subsurface repair at an estimated cost of $113,372. Tower Hill notified the Cases of the neutral evaluator's assessment and again informed them that they were required to enter into a contract for the repairs before it would be required to pay.

The Cases filed an action for declaratory judgment against Tower Hill in January 2011, seeking a determination of the proper method of repair. In June 2011,

_____

[1]Section 627.7074, Florida Statutes (2009), sets forth a process by which parties may resolve a sinkhole dispute without resorting to litigation. The statute "provides a substantive right of parties to have a neutral evaluator review a claim and render a nonbinding report before the matter is adjudicated by a court." Morejon v. Am. Sec. Ins. Co., 829 F. Supp. 2d 1258, 1260 (M.D. Fla. 2011).

the Cases retained yet another engineering firm, KCI Technologies, to evaluate the property. That firm concluded that compaction grouting alone was not sufficient and recommended a hybrid system of grouted injection piers, pressure grouting points, and interior chemical injection points at a cost of $174,000. The Cases also had Biller Reinhart conduct a second evaluation of the property in August 2013, and the engineer concluded that further sinkhole damage had occurred and that the underpinning and grouting necessary to repair the damage had increased to an estimated cost of $371,372 to $391,222.

Tower Hill moved for summary judgment in September 2014, arguing that the terms of the policy established that it was required only to pay for the plan recommended by its expert. The Cases responded that based on the evaluations they had obtained, there was a material issue of fact regarding how to stabilize the subsurface property and that summary judgment was therefore inappropriate. After a hearing in February 2015, the trial court granted Tower Hill's motion for summary judgment, concluding that the terms of the policy are "clear and unambiguous and [that] the only issue remaining is an issue of fact, *i.e.*, damages for the breach." The trial court entered summary judgment in favor of Tower Hill on March 27, 2015.

On appeal, the Cases contend that a declaratory judgment is appropriate in this case because they are in doubt regarding the proper method of subsurface repair under the terms of the policy and that summary judgment was improperly granted because there is a disputed issue of fact regarding the proper method of subsurface repair. Tower Hill concedes error on the basis of this court's holdings in Roker v. Tower Hill Preferred Insurance Co., 164 So. 3d 690 (Fla. 2d DCA 2015), Sanchez v. Royal

Palm Insurance Co., 166 So. 3d 212 (Fla. 2d DCA 2015), and Estrada v. Tower Hill Select Insurance Co., 179 So. 3d 348 (Fla. 2d DCA 2015). The trial court did not have the benefit of these decisions when it granted summary judgment to Tower Hill.

In Roker, the homeowner filed a breach of contract action against her insurer, alleging facts similar to the facts in this case. 164 So. 3d at 691-92. The trial court granted summary judgment, agreeing with the insurer that the policy required the homeowner to enter into a contract for subsurface repair in accordance with the recommendations of the insurer's expert. This court reversed, concluding that summary judgment was not appropriate:

> Here, the record reflects that a genuine issue of material fact remains concerning the proper method of subsurface repair to [the homeowner's] home. Three qualified engineers conducted testing in compliance with the Florida sinkhole statutes and arrived at different opinions as to the proper method of repair. Neither Florida law nor the insurance contract require the insured to enter into a contract for subsurface repairs in accordance with the insurance company's engineer's recommendation before benefits are payable.

Id. at 692. This court held that the "question of which recommended method of subsurface repair is sufficient to repair [the homeowner's] home is a question for the jury." Id. at 694; see also Estrada, 179 So. 3d at 349 (reversing final summary judgment on facts "nearly identical to those in Roker"); Sanchez, 166 So. 3d at 212 (reversing final summary judgment for the reasons explained in Roker).

The dispute in this case is similar to the disputes in Roker, Estrada, and Sanchez. Accordingly, as we did in those cases, we reverse the final summary judgment and remand for further proceedings. We note our appreciation for Tower Hill's concession of error.

-4-

Reversed and remanded for further proceedings.

KHOUZAM and BLACK, JJ., Concur.